NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| JASON D. FLUDD, : | |
| : | |
| Plaintiff, : | Civil Action No. 12-6537 |
| : | |
| v. : | **OPINION** |
| : | |
| CAROLYN W. COLVIN, : | |
| Acting Commissioner of Social : | |
| Security, : | |
| : | |
| Defendant. : | |

**PISANO, District Judge:**

Presently before the Court is the Appeal of Jason D. Fludd ("Plaintiff") from the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his request for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). The Court has jurisdiction to review this matter pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), and reaches its decision without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, the Court finds that the record contains substantial evidence supporting the Administrative Law Judge's ("ALJ") decision and therefore, affirms the final decision of the Commissioner.

**I. PROCEDURAL HISTORY**

Plaintiff filed an application for Title II DIB and Title XVI SSI on March 4, 2008, alleging disability and an inability to work beginning on September 22, 2007, due to a fracture of the spine. R. 32. The Social Security Administration denied his claims both initially and on reconsideration. Upon Plaintiff's request, a hearing was held before an ALJ. On March 11,

2010, the ALJ issued a written decision denying the Plaintiff's claims. On August 16, 2012, the Appeals Council denied Plaintiff's request for review and the ALJ's decision became the final decision of the Commissioner. Subsequently, Plaintiff appealed the decision to this Court.

**II. BACKGROUND**

Plaintiff was born on March 28, 1984. R. 59. During the eight (8) years prior to his alleged disability, Plaintiff worked as a short-order cook in New Jersey. R. 141. Plaintiff lives with his spouse and has two children ages eight (8) and five (5), one of whom also lives with Plaintiff. R. 119. On September 22, 2007, Plaintiff was involved in a car accident where he sustained a T12 fracture and required a posterior laminectomy and fusion from T9-L2, which was performed on September, 25, 2007. R. 199. After his surgery, Plaintiff was ultimately discharged home and did not have a formal therapy program. *Id.*

On November 7, 2007, Plaintiff was examined by Doctor Zerbo who indicated that, at that point, Plaintiff was "doing well." R. 197. Doctor Zerbo further noted that Plaintiff's incision was well healed and the neurologic and vascular status of his extremities appeared stable and intact. *Id.* The overall impression of Doctor Zerbo at Plaintiff's appointment was that it was an "uncomplicated healing status" and the plan was to continue having Plaintiff wear a brace until Plaintiff could be reevaluated in six weeks for new x-rays. *Id.*

Plaintiff's next appointment occurred on January 3, 2008, where Doctor Zerbo indicated that Plaintiff was "doing very well." R. 196. Doctor Zerbo again concluded that Plaintiff's incision was "well healed" and the "[n]eurovascular status to the extremities [was] stable and intact." *Id.* Further, Doctor Zerbo stated that the x-rays taken at Plaintiff's appointment revealed a "stable position of his fracture as well as stable internal fixation." *Id.* The records from Plaintiff's appointment demonstrate that Plaintiff was not taking any pain medication except for over the counter Tylenol and, during the appointment, Doctor Zerbo wrote Plaintiff a prescription

for Ultram. *Id.* Ultimately, Doctor Zerbo's impression of Plaintiff was, again, that it was an "uncomplicated healing status" and the plan was to get Plaintiff out of his back brace to start him in a formal physical therapy program. *Id.*

On March 13, 2008, Plaintiff went for his third follow up appointment where Doctor Zerbo observed that Plaintiff's progression was somewhat slow due to his failure to start formal physical therapy as a result of issues concerning Plaintiff's insurance. R. 195. On examination, however, Doctor Zerbo noted that again, Plaintiff's incision was well healed, the neurovascular status to his extremities was stable and intact, his gait was stable, and that Plaintiff had no tenderness to touch in the lumbar spine. *Id.* Further, Plaintiff did not require any pain medication. *Id.* Doctor Zerbo suggested that Plaintiff return in one (1) month for new x-rays. *Id.*

It appears as though Plaintiff went several months without a Doctor's appointment, until October 30, 2008, when Plaintiff saw Doctor Napolitano for a consultative exam. R. 199. Plaintiff's records indicated that at this time, he was still not on pain medication and was taking Extra Strength Tylenol three (3) times per day. *Id.* Doctor Napolitano's impression of Plaintiff was that he "demonstrates an overall steady gait with the use of a cane" and that "his strength was overall intact." R. 200. Doctor Napolitano further noted that Plaintiff did have "sensory changes of the left anterior thigh and decreased range of motion of the lumbosacral spine." *Id.* Further, the development summary worksheet prepared by the state agency soon after Plaintiff's consultative appointment indicated that in November, 2008, Plaintiff claimed that he used a cane to protect himself because he had a fear of falling, but it was for a feeling of security and not medical necessity. R. 210-11.

Nearly one (1) year passed before Plaintiff consulted another physician and on October 15, 2009, he visited Doctor Okonkwo at the Monmouth Family Health Center. R. 223. Doctor Okonkwo indicated that Plaintiff was complaining of chronic back pain and told the physician

3

that he could not sit or stand for a long period of time. R. 224. Doctor Okonkwo prescribed Plaintiff Flexeril for the pain, noted that there were no lingering issues from a kidney stone previously suffered by Plaintiff[1], and advised Plaintiff on a low salt diet due to elevated blood pressure. R. 225.

### III. STANDARD OF REVIEW

A reviewing court must uphold the final decision of the Commissioner if it is supported by "substantial evidence." 42 U.S.C. § 405(g); 1383(c)(3); *Morales v. Apfel*, 225 F.3d 310, 316 (3d. Cir. 2000). In order for evidence to be "substantial," it must be more than a "mere scintilla," *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 220 (1938), but may be slightly less than a preponderance. *Stunkard v. Sec'y of Health & Human Servs.*, 841 F.2d 57, 59 (3d Cir. 1988). The inquiry is not whether the reviewing court would have made the same determination, but whether the Commissioner's decision was reasonable given the record before him. *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988).

The reviewing court must review the evidence in its entirety. *Daring v. Heckler*, 727 F.2d 64, 70 (3d. Cir. 1984). As part of this review, the court "must take into account whatever in the record fairly detracts from its weight." *Schoenwolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (quoting *Willibanks v. Sec'y of Health and Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1988)). The Commissioner has an obligation to facilitate the court's review: when the record shows conflicting evidence, the Commissioner "must adequately explain in the record his reasons for rejecting or discrediting competent evidence." *Brewster v. Heckler*, 786 F.2d 581, 585 (3d Cir. 1986). Additionally, the reviewing court is not empowered to weigh the evidence or

---

[1] Plaintiff's appeal does not involve any allegations of a disability resulting from his kidney stone. Therefore, the Court need not go into factual detail on the medical history of Plaintiff's kidney stone.

4

substitute its conclusions for those of the fact finder. *Early v. Heckler*, 743 F.2d 1002, 1007 (3d Cir. 1984).

### A. Establishing Disability

In order to be eligible for DIB benefits, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423 (d)(1)(A). The statute also requires that an individual will be determined to be under a disability only if his physical and mental impairments are "of such severity that [he] is not only unable to do [his] previous work, but cannot, considering [his] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423 (d)(2)(A).

To determine disability, the Social Security regulations set up a five-step sequential evaluation process for the Commissioner to use. 20 C.F.R. § 404.1520. If a finding of disability or non-disability can be made at any point in the sequential analysis, the Commissioner will not review the claim further. 20 C.F.R. § 404.1520(b). At the first stage, the Commissioner must determine whether the claimant has engaged in any substantial gainful activity since the onset of the alleged disability. *Id.* If the claimant has not engaged in any substantial gainful activity, step two requires the Commissioner to consider whether the claimant has a "severe impairment" or "combination of impairments" which significantly limits his physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). The claimant bears the burden of establishing the first two requirements of the evaluation, and failure to satisfy either automatically results in a denial of benefits. *Bowen v. Yuckert,* 482 U.S. 137, 146-47 n.5 (1987).

If the claimant satisfies the first two steps, the third step requires that he provide evidence that his impairment is equal to or exceeds one of those impairments listed in Appendix 1 of the regulations ("Listing of Impairments"). 20 C.F.R. § 404.1520(d). Upon such a showing, he is presumed to be disabled and is automatically entitled to disability benefits. *Id.* If the claimant does not have a listed impairment, the Commissioner will evaluate and make a finding about the claimant's Residual Functioning Capacity ("RFC"). 20 C.F.R. § 404.1520(a)(4), (e).

The fourth step of the analysis focuses on whether the claimant's RFC permits him to perform past relevant work. 20 C.F.R. § 404.1520(e). A claimant's RFC is defined as the level at "which an individual is still able to do despite the limitations caused by his or her impairments." *Id.* If the plaintiff is found to be capable of returning to his previous line of work, then he is not disabled and therefore not entitled to disability benefits. *Id.*

Conversely, if the Plaintiff is unable to perform the work of his previous job, the final step requires the Commissioner to consider the RFC along with the plaintiff's age, education, and past work experience to determine if he can do other work in the national economy. 20 C.F.R. § 404.1520(g). The burden shifts to the Commissioner to demonstrate that the Plaintiff can perform other substantial gainful work. 20 C.F.R. § 404.1520(f). If the Commissioner cannot satisfy this burden, the plaintiff is entitled to and will receive Social Security benefits. *Yuckert,* 482 U.S. at 146-47 n.5.

### B. Objective Medical Evidence

Under Title II of the Social Security Act, a plaintiff is required to provide objective medical evidence in order to prove his disability. 42 U.S.C. § 423(d)(5)(A). Moreover, a plaintiff cannot prove that he is disabled based exclusively on his subjective symptoms. *Green v. Schweiker,* 749 F.2d 1066, 1069-70 (3d. Cir. 1984). Subjective complaints of pain, without more, do not in themselves constitute disability. *Id.* In order for the plaintiff to be awarded benefits, he

must provide medical findings that show that he has a medically determinable impairment. 42. U.S.C. § 423(d)(1)(A).

## IV. THE ALJ'S DECISION

On February 4, 2010, a hearing was held before ALJ Dennis Katz in White Plains, New York, at which Plaintiff testified. R. 44. In a written opinion dated March 11, 2010, the ALJ denied Plaintiff's claim for DIB and SSI, concluding that he was not disabled at any time from September 22, 2007, the alleged onset date, through the date of the opinion. R. 37.

After looking over all of the evidence in the record, the ALJ concluded that Plaintiff met the insured status requirements of the Social Security Act through September 30, 2013. R. 33. The ALJ then proceeded to the five-step sequential analysis pursuant to 20 C.F.R. § 404.1520. R. 32. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity from September 22, 2007. R. 33. During step two, the ALJ determined that Plaintiff's back disorder constituted a severe impairment. *Id.*

With respect to step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or was equivalent in severity to one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 34. Thus, the ALJ proceeded to evaluate Plaintiff's RFC. In order to satisfy this part of the evaluation, the ALJ engaged in a two-part inquiry: (i) whether there was an underlying medically determinable physical impairment, that could be shown by medically acceptable clinical and laboratory diagnostic techniques, and that could reasonably be expected to produce the claimant's pain or symptoms; and (ii) evaluating the intensity, persistence, and limiting effects of the claimant's pain and symptoms to determine the extent to which they limit his functioning, and in the event that these aspects of the claimant's symptoms are not substantiated by the objective medical evidence, the ALJ was to make a finding on the credibility of the statements based on a consideration of the entire record. *Id.*

7

In performing this analysis, the ALJ considered all of Plaintiff's medical records, subjective statements, good work history, and overall demeanor. The crux of the ALJ's analysis focused on whether Plaintiff's pain or symptoms were credible and/or supported by the objective medical evidence. The ALJ conducted its analysis chronologically, beginning with Plaintiff's initial appointments with Doctor Zerbo, who found that the claimant's healing had no complications, Plaintiff did not require pain medications, that there were medical improvements post-surgery. R. 34. Next, the ALJ reviewed the records from Plaintiff's October 30, 2008, appointment with Doctor Napolitano. There, the ALJ found that his physical examination was within normal limits, and although he did evidence some sensory changes in the left anterior thigh and decreased range of motion of the lumbosacral spine, Plaintiff's straight leg raise was inconsistent because he claimed no pain in the sitting position. *Id.* Further, with or without an assistive device for balancing, Plaintiff was observed to be able to walk on all surfaces for half of a block while carrying something, and the x-rays showed normal alignment. R. 34-35. Thus, as noted by the ALJ, Doctor Napolitano assessed the claimant to have minimal physical limitations and suggested that his surgery was successful. R. 35.

The ALJ next considered the November, 2008 Physical Residual Functional Capacity Assessment performed by a state agency reviewer, who opined that that the claimant could only carry up to ten (10) pounds, sit for about six (6) hours, and walk with a cane for at least two (2) hours in an eight (8) hour work day. *Id.* The ALJ specifically noted, however, that he gave minimal evidentiary weight to this evaluation because it was not made a physician, was not based on an actual examination of the claimant, and was not consistent with Doctor Napolitano's actual, physical examination which was performed merely weeks before the date of this assessment. *Id.* Further, the ALJ noted that Doctor Napolitano's earlier examination was consistent with the fact that the claimant had not required significant medical attention since his surgery, which occurred

more than a year prior to the state reviewer's assessment. *Id.* The ALJ also analyzed Doctor Okonkwo's records from Plaintiff's October, 2009 appointment, but gave little evidentiary weight to this physician's analysis because he relied only on the subjective statements made by Plaintiff and did not perform any objective testing relevant to Plaintiff's claims in the present case. *Id.* Despite this, the ALJ pointed out that the records from Plaintiff's appointment with Doctor Okonkwo still showed that Plaintiff was only in "mild pain." Further, these records revealed the lack of need for medical attention for an entire year from Doctor Napolitano's assessment until Doctor Okonkwo's appointment, which reconfirmed the analysis that claimant enjoyed substantial medical improvement since his surgery. *Id.*

The ALJ further analyzed Plaintiff's subjective symptomatology and overall credibility as well as the location, duration, frequency and intensity of his symptoms, plus his daily activities, medication and functional limitations/restrictions. *Id.* The ALJ noted minimal difficulties in Plaintiff's ability to sit throughout the hearing, and stated that Plaintiff's testimony that he was rendered homebound and required a cane as a result of his impairment appeared exaggerated and not supported by the medical record. *Id.* Specifically, the ALJ noted that no physician had been advised of such a debilitation, and there was further no evidence that any physician prescribed Plaintiff to use a cane after calendar year 2007. *Id.* Rather, any post-2007 references to a cane were subjective statements by Plaintiff to the physician(s), but there was no evidence that any Doctor informed Plaintiff that use of the cane was medically necessary. Overall, the ALJ found that Plaintiff's subjective complaints were not corroborated by the objective medical evidence, and the intensity, persistence, and functionally limiting effects of his symptoms did not preclude Plaintiff the ability to perform basic work-related activities. *Id.* Thus, before reaching step four, the ALJ concluded that the medical evidence established that Plaintiff has the RFC to perform a full range of sedentary exertion level work. R. 36.

In analyzing step four, the ALJ concluded that Plaintiff is unable to perform any past relevant work because a short order cook requires a medium level of exertion. Because Plaintiff was unable to perform his past relevant work, the ALJ moved onto step five where he considered the Plaintiff's RFC along with his age, education, and work experience and determined if he could do other work in the national economy in conjunction with the Medical-Vocational Guidelines, 20 C.F.R. Part 404 Subpart P, Appendix 2. *Id.* Based on all of the evidence in the record and the claimant's age, education, and work experience, the ALJ concluded that the Plaintiff was not disabled and was capable of making a successful adjustment to other work that existed in the national economy. *Id.*

**V. DISCUSSION**

The Plaintiff contends in this Appeal that the ALJ's decision erred in two ways. First, he alleges that the ALJ's RFC determination was not supported by substantial evidence because the ALJ failed to consider non-exertional limitations which would have revealed that Plaintiff is unable to perform a full range of sedentary work. Second, Plaintiff alleges that vocational evidence was required at step five, and that the credibility evaluation was inadequate as a basis to reject Plaintiff's symptoms and limitations.

Plaintiff first argues that the ALJ erred in determining his RFC because the ALJ failed to consider non-exertional limitations. Specifically, Plaintiff argues that the ALJ failed to take into consideration the fact that he was unable to sit for long periods of time due to his back pain and required a cane; therefore, Plaintiff claims that he could not perform a full range of sedentary work. As mentioned above, for evidence to be deemed "substantial," it must be more than a mere scintilla, *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 220 (1938), but may be slightly less than a preponderance. *Stunkard v. Sec'y of Health & Human Servs.*, 841 F.2d 57, 59 (3d Cir. 1988). In this case, the ALJ's decision and more specifically his RFC determination was supported by

substantial evidence. The ALJ's determination took into consideration Plaintiff's 2007 surgery, his follow up appointments, and his subjective statements and complaints. Further, the ALJ analyzed the treating physicians' opinions and physical assessments of Plaintiff that took place over a span of two (2) years from the date of Plaintiff's surgery. The ALJ's analysis included what the Doctors had to say about Plaintiff's recovery and how the Plaintiff described his pain, his lack of need for pain medication, and what the x-rays showed. The ALJ also specifically pointed out that none of the medical records supported the fact that Plaintiff needed a cane after 2007.

When going through the record, the ALJ gave little weight to the state agency reviewer's comments and Doctor Okonkwo's assessment of Plaintiff. If the ALJ concludes that certain testimony is not credible he must indicate the basis for that conclusion in the decision. *Cotter v. Harris*, 642. F.2d 700, 705-706 (3d. Cir. 1981). In his decision, the ALJ pointed out that he gave little weight to the November, 2008, state agency reviewer because the reviewer was not a physician, did not actually examine the claimant, and was inconsistent with the medical evidence performed only a few weeks prior by Doctor Napolitano. The ALJ further explained why he gave little weight to Doctor Okonkwo's October, 2009, records, indicating that this physician relied solely on Plaintiff's subjective statements and did not perform an actual physical assessment of Plaintiff. The Third Circuit has made it clear that the ALJ is not bound by the opinion of a treating physician when determining the residual functional capacity. *Brown v. Astrue,* 649 F.3d 193, 197 n.2 (3d. Cir. 2011). Additionally, under 20 C.F.R. §404.1527(d)(2) if the medical opinion of a treating source is inconsistent with other substantial evidence in the record, the ALJ may weigh the evidence. Therefore, the ALJ did not err by placing little weight on Doctor Okonkwo's assessment.

Plaintiff further argues that the ALJ did not give sufficient weight to Plaintiff's own testimony. Plaintiff asserts that his testimony surrounding the need for a cane, that he is homebound as a result of his injuries, and cannot sit or stand for long periods of time evidence the fact that he cannot perform a full range of sedentary work. Importantly, however, an ALJ must give great weight to a claimant's testimony only "when this testimony is supported by competent medical evidence," and an ALJ may "reject such claims if he does not find them credible." *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 433 (3d Cir. 1999). In the ALJ's opinion, he expressly states that he has considered Plaintiff's subjective testimony but that it appeared exaggerated and was not supported by the medical evidence. Accordingly, the ALJ did not err in declining to give great weight to Plaintiff's testimony.

Next, Plaintiff claims that the ALJ erred because he relied solely on the Medical Vocational Guidelines in step five where, instead, vocational expert testimony was needed. Specifically, Plaintiff claims that where both exertional and non-exertional limitations exist, vocational expert testimony is required. This Court agrees with Plaintiff's legal conclusion, *see Claussen v. Chater*, 950 F. Supp. 1287, 1298 (D.N.J. 1996) ("Directly applying the Grids to a claimant with non-exertional limitations is improper"); however, disagrees with the application of this law here. Rather, as explained above, the ALJ's decision surrounding Plaintiff's limitations was supported by substantial evidence. The ALJ concluded that Plaintiff did not have any non-exertional limitations as the medical evidence supported the fact that Plaintiff can sit for a total of eight (8) hours, sit/stand for four (4) hours, and complete an eight (8) hour work day; accordingly, Plaintiff would not have difficulty performing the manipulative or postural functions of sedentary work. In finding that the ALJ's decision was supported by substantial evidence, vocational expert testimony was not required. *See Bailey v. Comm'r of Soc. Sec.*, 354 Fed. App'x 613, 619 (3d Cir. 2009).

## VI. CONCLUSION

For the foregoing reasons, the Court concludes that substantial evidence supports the ALJ's decision denying Plaintiff DIB and SSI benefits. Therefore, the Court affirms the final decision of the Commissioner. An appropriate Order accompanies this Opinion.

<u>/s/ Joel A. Pisano</u>
JOEL A. PISANO
United States District Judge

Dated: December 9, 2013